FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

97 APR 17 PM 1:55

U.S. DISTRICT COURT
N.D. OF ALABAMA

CARRIE E. SPENCER and CHARLIE )
SPENCER, SR., )
    Plaintiff(s); )
  )
-vs.- )
  )
  ) No. CV-96-P-248-W
DEBT CONTROL CENTER, INC. and )
DISCOVER CARD SERVICES, INC., )
    Defendant(s). )

ENTERED

APR 17 1997

### OPINION

A motion for summary judgment by defendant Debt Control Center, Inc. ("Debt Control") and a motion for summary judgment by defendant Novus Services, Inc. ("Novus"), successor to Discover Card Services, Inc., ("Discover") were considered at the March 27, 1997 motion docket. For the following reasons, Debt Control's Motion for Summary Judgment is due to be denied and Discover's Motion for Summary Judgment is due to be granted.

### Facts[1]

Plaintiffs Carrie and Charlie Spencer have a son, Clemon Spencer. Clemon Spencer does not live with Carrie and Charlie Spencer. Prior to 1992, Clemon Spencer applied for and received a Discover card issued by Greenwood Trust Company, Inc. ("Greenwood"), which issues credit cards to customers under the trade name "Discover Card." Clemon Spencer listed his parents' address and telephone number on his application.

Discover provided credit card services to Greenwood, its sister corporation. Novus is the

---

[1]. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.



successor to Discover. Novus attempts to collect debts owed by Greenwood's customers to Greenwood. Novus is not principally engaged in the business of debt collection; in 1995, for example, eight percent of Novus' expenses resulted from debt collection activities. Novus provides a full range of other credit card services. Novus performs debt collection services only for Greenwood.

At some time in 1992, Clemon Spencer became unemployed and became in default on his Discover card. Neither Carrie nor Clemon Spencer has ever been indebted to Discover. In 1992, Discover began calling Clemon Spencer at the Spencers' home regarding his debt. The Spencers received these calls as early as 7:00 a.m. and as late as 10:30 p.m. The Spencers sometimes received these calls as often as two or three times a day. The Spencers received calls on Saturday mornings. Employees of Debt Control did not identify themselves as such, but merely indicated that they were calling in connection with the Discover account.

Ms. Spencer told Discover representatives that Clemon Spencer did not live at the Spencers' house and that they did not owe Discover anything. She asked representatives not to call late at night. In the spring of 1993, Ms. Spencer told a Discover representative that Clemon Spencer had lost his job. The representative replied that "with all of the plantations down there he ought to be able to get a job." On another occasion, Ms. Spencer told a Discover representative that she did not know where Clemon Spencer was. The representative told Ms. Spencer, "your son must not care anything about you."

The calls continued from 1992 through 1994. On September 11, 1993, Discover made its last call to the Spencers' home. In November, 1993, Discover assigned the debt collection to an outside collection agency. On or about November 15, 1994, Clemon Spencer's account was

2

assigned to Debt Control, at which time Debt Control began making calls to the Spencers' home. On December 27, 1994, Ms. Spencer received a call from a representative of Discover. When she told the representative that Clemon Spencer was not there, the representative called her a liar. Ms. Spencer found herself unable to speak. Shortly thereafter, she was transported to the emergency room where she was diagnosed as having had an ischemic stroke. Mr. Spencer's expert testifies that an ischemic stroke is likely to be caused by unusual stress such as that experienced by Ms. Spencer during the telephone call. The defendants' expert has testified that this is highly unlikely.

Novus frequently turns over debts it deems uncollectible to an outside collection agency. Novus performs quarterly computer audits and a yearly on-site audit on each of the collection agencies it uses. In the yearly audit, Novus has the right to inspect the books of the agency and monitor collectors. Novus requires its agencies to provide a computer terminal in Novus' facility to enable Novus to do the quarterly audits. Novus and Debt Control operated in accordance with a collection agreement. The agreement provides that Debt Control must provide Novus with a copy of all form letters and a written description of collection practices. Novus must give approval of modification to letters. Novus asks for collection practices to insure that the agency is contacting customers at least once every thirty days. Novus does not supervise Debt Control's day-to-day activities. Novus reserves the right to monitor the day-to-day activities on the collection of a particular debt. Debt Control must get prior approval from Novus to settle a debt for less than 70% of the debt.

Carrie Spencer, Charlie Spencer, Sr. and Clemon Spencer filed this case on December 27, 1995. In counts one, two, and three of the complaint, the plaintiffs stated claims for violations

of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, negligent infliction of emotional distress, outrage, failure to properly hire, train, or supervise employees, failure to provide reasonable guidelines for employees to follow, and loss of consortium by Charlie Spencer, Sr. In count four of the complaint, the plaintiffs stated a claim for violations of the FDCPA based on calls made to Clemon Spencer at work. The plaintiffs sought $10,000 for each telephone call in violation of the FDCPA. On May 22, 1996, Clemon Spencer was voluntarily dismissed from the case. Therefore, count four, which related entirely to Clemon Spencer, was dismissed. All claims of outrage are dismissed in the accompanying order granting the plaintiffs' Motion to Dismiss the Tort of Outrage.

## Analysis

I.   FDCPA

A.   Novus

Novus argues that all claims under FDCPA are barred by the applicable one-year statute of limitations, that the FDCPA does not apply because Discover is not a "debt collector" under the statute, and that any recovery under the FDCPA would be limited to $1000 per violation. Novus contends that Ms. Spencer can show no evidence that her stroke was caused by the allegedly improper telephone call on December 27, 1994. Novus contends that it is not responsible for the actions of Debt Control under the theory of agency.

The plaintiffs argue that the FDCPA statute of limitations does not bar the action, because the telephone calls constitute a continuing tort, and the last telephone call was within the statutory period. The plaintiffs argue that Novus violated the FDCPA and was responsible for the acts of Debt Control through the theory of agency. The plaintiffs contend that the testimony of Dr.

4

Davies establishes that Ms. Spencer's stroke was caused by the telephone call and that the frequency and harassment of the telephone calls requires that damages not be limited to $1000 per violation.

The statute of limitations under the FDCPA is one year, running from the date of the violation. 15 U.S.C. § 1692k(d). Discover made its last call to the Spencers' home on September 11, 1993, more than two years before this lawsuit was filed. No action by Discover was made within the statutory period. Therefore, unless Discover is responsible for the actions of Debt control through the theory of agency, the plaintiffs' claims against Discover under the FDCPA are barred by the statute of limitations.

The existence of an agency relationship depends upon whether the principal has a right of control over the agent. *Merrill v. Joe Bullard Oldsmobile, Inc.*, 529 So. 2d 943, 945 (Ala. 1988). The plaintiffs have not introduced evidence sufficient to demonstrate that a reasonable trier-of-fact could conclude that Debt Control was the agent of Discover. Discover retained the right to monitor Debt Control to insure that it was effectively doing the job it was hired to do and the right to approve in advance written materials and general collection policies. However, Discover did not retain the right to direct the day-to-day debt collection practices of Debt Control. Because Discover is not responsible for the actions of Debt control through the theory of agency, the plaintiffs' claims against Discover under the FDCPA are barred by the statute of limitations, and Discover is due to be granted summary judgment.

B.      Debt Control

Debt Control argues that the December 27, 1994 telephone call is the only call at issue because the rest are barred by the applicable one-year statute of limitations and that any recovery

under the FDCPA would be limited to $1000 per violation. Debt Control contends that it did not violate the FDCPA. Debt Control also argues that Ms. Spencer can show no evidence that her stroke was caused by the allegedly improper telephone call on December 27, 1994.

The plaintiffs argue that the FDCPA statute of limitations does not bar action on any telephone calls prior to December 27, 1994, because the telephone calls constitute a continuing tort, and the last telephone call was within the statutory period. The plaintiffs argue that Debt Control violated § 1692c(a)(1), § 1692b(3), and § 1692d(5) of the FDCPA. The plaintiffs contend that the testimony of Dr. Davies establishes that Ms. Spencer's stroke was caused by the telephone call and that the frequency and harassment of the telephone calls requires that damages not be limited to $1000 per violation.

Because the plaintiffs have raised a genuine issue of material fact as to whether Debt Control violated the FDCPA, and because the plaintiffs have raised a genuine issue of material fact with regard to causation, Debt Control is not due to be granted summary judgment on the plaintiffs' claims under the FDCPA. However, because the FDCPA limits recovery, 15 U.S.C. § 1692k(a), the plaintiffs' recovery is limited to the actual damages sustained by the plaintiffs plus $1,000. As well, the court has not been able to find any instance in which the theory of continuing violation has been applied in the context of the FDCPA. Therefore, the only remaining alleged violation by Debt Control is that of December 27, 1994.

II.  . Negligence

The defendants argue that there is no cognizable claim for negligent infliction of emotional distress under Alabama law. They contend that, in their complaint, the plaintiffs do not allege negligence other than negligent infliction of emotional distress. The defendants also argue that

they owed the plaintiffs no duty to refrain from negligently attempting to collect a debt.

There is no cognizable action for negligent infliction of emotional distress under Alabama law. *Allen v. Walker*, 569 So. 2d 350, 352 (Ala. 1990). Therefore, both defendants are due to be granted summary judgment on the plaintiffs claims of negligent infliction of emotional distress.

Neither defendant owed the plaintiffs a duty to refrain from negligently attempting to collect a debt, or to train its employees to refrain from doing so. Therefore, both defendants are due to be granted summary judgment on the plaintiffs' claims of negligence.

III. Loss of Consortium

Because Novus is due to be granted summary judgment on all of Ms. Spencer's claims, Novus is also due to be granted summary judgment on Mr. Spencer's claim of loss of consortium. *Mattison v. Kirk*, 497 So. 2d 120, 123 (Ala. 1986). Because Debt Control's motion for summary judgment has been denied as to the plaintiffs FDCPA claims, Debt Control is not due to be granted summary judgment on Mr. Spencer's loss of consortium claim at this time.

Dated: April 17, 1997

                                                  Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Oscar W. Adams, III
    Mr. Bernard D. Nomberg
    Mr. W. Lee Gresham, III
    Mr. J. Rushton McClees
    Mr. W.F. Green
    Mr. William A. Scott, Jr.
    Mr. Wayne Morse, Jr.